Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Brieanne Scully (BS 3711)
bscully@ipcounselors.com
Danielle S. Yamali (DY 4228)
dfutterman@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391
*Attorneys for Plaintiff*
*Rove, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROVE, LLC, <br><br> *Plaintiff* <br><br> v. <br><br> ANTONIO168, BUDFANG, BUDPORN, BUGOO1, CBDBUDVAPE, CBDOPEN2016, CBDTANK, CBDVAPEPEN, CIGMVP, DANKMANUFACTURE, EVAFUN, FPINDUSTRY, GADGETTOP, GREENSTORE01, GREENSUPPLY, HEMPVAPE01, HOTCARTRIDGE, ISMOK, JPODFACTORY, KANGERTECH01, KEWEISITONG, LEVAPE, LIUXI19880510, MARVELOUS2019, NACTHY, NUWELL, SENMAR, SEXVP, SMOKTECH88, SMOKVAPE, SUMMER0816, SZCNGATE, SZGARDEN, TRUSTWAY, TXALBERTCIGSLTD, VAPEFACTORY880, VAPORKINGDOM, VAPORMAKER, XIAXIAANAN, XUXIU99 and YUJINLIN, <br><br> *Defendants* | **CIVIL ACTION No. ___** <br><br><br><br> <u>**COMPLAINT**</u> <br><br> **Jury Trial Requested** <br><br> **FILED UNDER SEAL** |

**GLOSSARY**

| Term | Definition |
|---|---|
| **Plaintiff or Rove** | Rove, LLC |
| **Defendants** | Antonio168, Budfang, Bud_porn, Bugoo1, Cbdbudvape, Cbdopen2016, Cbdtank, Cbd_vape_pen, Cigmvp, Dankmanufacture, Evafun, Fpindustry, Gadgettop, Green_store01, Green_supply, Hempvape01, Hotcartridge, Ismok, Jpodfactory, Kangertech01, Keweisitong, Levape, Liuxi19880510, Marvelous2019, Nacthy, Nuwell, Senmar, Sexvp, Smoktech88, Smokvape, Summer0816, Szcngate, Szgarden, Trustway, Txalbert_cigsltd, Vapefactory880, Vaporkingdom, Vapormaker, Xiaxiaanan, Xuxiu99 and Yujinlin |
| **DHgate** | Dunhuang Group d/b/a DHgate.com, an online marketplace and e-commerce platform which allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their wholesale and retail products originating from China directly to consumers worldwide and specifically to consumers residing in the U.S., including New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **NAL** | New Alchemy Limited, a company that provides intellectual property infringement research services, to investigate and research manufacturers, wholesalers, retailers and/or other merchants offering for sale and/or selling counterfeit products on online marketplace platforms |
| **New York Addresses** | 20 Cooper Square, New York, New York 10003; 244 Madison Ave, Suite 411, New York, New York 10016 |
| **Complaint** | Plaintiff's Complaint filed on March 10, 2020 |
| **Application** | Plaintiff's *Ex Parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery filed on March 10, 2020 |
| **Hon Dec.** | Declaration of Phil Hon in Support of Plaintiff's Application |

| | |
|---|---|
| **Arnaiz Dec.** | Declaration of Jessica Arnaiz in Support of Plaintiff's Application |
| **Yamali Dec.** | Declaration of Danielle S. Yamali in Support of Plaintiff's Application |
| **Rove Products** | Premium high quality stainless steel and glass cartridges, batteries and related accessories for vaporizing |
| **Rove Marks** | U.S. Trademark Registrations Nos.: 5,436,219 for "ROVE" for goods in Class 9 and 34; and 5,436,220 for "" for goods in Class 9 and 34 |
| **Rove Website** | www.rovebrand.com |
| **Counterfeit Products** | Products bearing or used in connection with one or more of the Rove Marks, and/or products in packaging and/or containing labels and/or hang tags bearing one or more of the Rove Marks, and/or bearing or used in connection with marks that are confusingly similar to the Rove Marks and/or products that are identical or confusingly similar to one or more of the Rove Products |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as DHgate, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) |
| **Financial Institutions** | Any and all banks, financial institutions, credit card |

iv

|  | companies and payment processing agencies, such as DHgate (*e.g.*, DHpay.com), PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer") and PingPong Global Solutions, Inc. ("PingPong") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendants |
| --- | --- |
| **Third Party Service Providers** | Online platforms, including, without limitation, those owned and operated, directly or indirectly by DHgate, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |

Plaintiff, a limited liability company, by and through its undersigned counsel, alleges as follows:[1]

## <u>NATURE OF THE ACTION</u>

1.     This action involves claims for trademark infringement of Plaintiff's federally registered trademarks in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq.*; counterfeiting of Plaintiff's federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c); false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); and related state and common law claims, arising from the infringement of the Rove Marks, including, without limitation, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling unlicensed, counterfeit and infringing versions of Plaintiff's Rove Products by Defendants.

### <u>Vaping and Illnesses Caused by Counterfeit Electronic Cigarettes and Vape Materials</u>

2.     Counterfeit vape materials from China have come under scrutiny in the United States recently as federal authorities are investigating vaping-related lung illnesses in hundreds of people across the country.[2]

3.     Vaping involves inhaling fumes from electronic cigarettes or similar devices that heat cartridges filled with ingredients including nicotine and THC.[3]

4.     As of February 18, 2020, the Centers for Disease Control confirmed 2,807 hospitalized cases or deaths from e-cigarette, or vaping, product use-associated lung injury from all

---

[1] Where a defined term is referenced herein but not defined, it should be understood as it is defined in the Glossary.
[2] Rob Kuznia and Lena H. Sun, *Potential Culprits in Mysterious Lung Illnesses: Black-Market Vaping Products* (Sept. 25, 2019), The Washington Post, https://www.washingtonpost.com/health/potential-culprits-in-mystery-lung-illnesses-black-market-vaping-products/2019/09/24/cb5b708e-d98d-11e9-ac63-3016711543fe_story.html.
[3] Daniela Hernandez, *Sales of Illicit Vaping Products Find Home Online* (Sept. 20, 2019), The Wall Street Journal, https://www.wsj.com/articles/sale-of-illicit-vaping-products-find-home-online-11568971802.

50 states, the District of Columbia and two U.S. territories (Puerto Rico and U.S. Virgin Islands.[4] Sixty-eight deaths have been confirmed in 29 states and the District of Columbia (as of February 18, 2020). *Id.*

5.      Industry experts have found that counterfeit vape products contain ingredients including pesticides and vitamin E acetate, which is a potential culprit behind the vaping related illnesses.[5]

6.      Moreover, counterfeit vaping operations purchase counterfeit packaging from Chinese factories and empty vape cartridges, which are ultimately filled with THC liquid.  It is often this THC liquid that is cut with other substances that can be dangerous and cause serious illnesses.[6]

7.      The packaging of these counterfeit products are sometimes direct counterfeits of mass-market brands, and appear to be legitimate.  Dr. Howard Zucker, commissioner of the New York State Department of Health has stated that "[t]he counterfeit handbag you buy on the corner is not going to kill you but the counterfeit vaping device you buy has a chance to kill you." *Id*.

8.      Mr. Zucker has also stated that consumers would not recognize that the counterfeit vapes are not authentic products.  *Id.*

## JURISDICTION AND VENUE

9.      This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.; pursuant to 28 U.S.C.

---

[4] Center for Disease Control and Prevention, *Outbreak of Lung Injury Associated with E-Cigarette Use, or Vaping*, https://www.cdc.gov/tobacco/basic_information/e-cigarettes/severe-lung-disease.html.
[5] Hernandez, *supra* note 3.
[6] Julie Bosman and Matt Richtel, *Vaping Bad: Were 2 Wisconsin Brothers the Walter Whites of THC Oils?* (Sept. 15, 2019), The New York Times, https://www.nytimes.com/2019/09/15/health/vaping-thc-wisconsin.html.

§1338(b) as an action arising out of claims for false designation of origin and unfair competition and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this Action as to form part of the same case or controversy.

10. Personal jurisdiction exists over Defendants in New York pursuant to N.Y.C.P.L.R. § 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3), or in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York, and/or derive substantial revenue from their business transactions in New York and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in New York such that Defendants should reasonably expect such actions to have consequences in New York, for example:

a. Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including New York, through accounts with online marketplace platforms such as DHgate as well as any and all as yet undiscovered User Accounts, through which consumers in the U.S., including New York, can view one or more of Defendants' Merchant Storefronts that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including New York, as a means for establishing regular business with

the U.S., including New York.

b.      Upon information and belief, Defendants are sophisticated sellers, each operating one or more commercial businesses through their respective User Accounts, using their Merchant Storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Counterfeit Products to consumers worldwide, including to those in the U.S., and specifically New York.

c.      Upon information and belief, all Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to New York and specifically to the New York Addresses.

d.      Upon information and belief, Defendants have transacted business with consumers located in the U.S., including New York, for the sale and shipment of Counterfeit Products.

e.      Upon information and belief, Defendants are aware of Plaintiff, its Rove Products and Rove Marks, and are aware that their illegal counterfeiting and infringing actions alleged herein are likely to cause injury to Plaintiff in the U.S. and specifically, in New York.

11.      Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct, transact and/or solicit business in New York.

## **THE PARTIES**

12.      Plaintiff is a California limited liability company with a principal place of business located at 3505 Cadillac Avenue, #1, Costa Mesa, California 92626.

13.      Upon information and belief, Defendants are merchants on the DHgate online marketplace platform, through which Defendants offer for sale and/or sell Counterfeit Products, with a principal place of business at the addresses identified, if any, in the printouts of screenshots

of Defendants' Merchant Storefronts in **Exhibit C**.

<u>**GENERAL ALLEGATIONS**</u>

<u>**Plaintiff and Its Well-Known Rove Products**</u>

14.    Plaintiff is prominent developer and manufacturer of organic, high quality vaporizing products.

15.    The Rove brand is used in connection with the promotion and sale of premium high quality stainless steel and glass cartridges, batteries and related accessories for vaporizing.  Images of the Rove Products are attached hereto as **Exhibit A** and incorporated herein by reference.

16.    Rove promotes and sells its products exclusively through licensed dispensaries who distribute the Rove Products in the United States.

17.    Plaintiff's Rove Products have achieved great success since their initial introduction.

18.    While Plaintiff has gained significant common law trademark and other rights in its Rove Products, through use, advertising and promotion, Plaintiff has also protected its valuable rights by filing for and obtaining federal trademark registrations.

19.    Plaintiff is the owner of the following U.S. Trademark Registrations Nos.: 5,436,219 for "ROVE" for goods in Classes 9 and 34; and 5,436,220 for "" for goods in Classes 9 and 34.  True and correct copies of the registration certificates for the Rove Marks are attached hereto as **Exhibit B** and incorporated herein by reference.

20.    The Rove Marks are currently in use in commerce in connection with the Rove Products.  The Rove Marks were first used in commerce on or before the dates of first use as reflected in the registrations attached hereto as Exhibit B.

21.    In addition to the channels described above, Plaintiff also markets the Rove Products

on the Rove Website.

22.     The success of the Rove Products is due in part to Plaintiff's marketing and promotional efforts.  These efforts include advertising and promotion through Rove's Website, retailer websites, distributor's websites and other internet-based advertising, print, participation in trade shows, among other efforts.

23.     Plaintiff has spent substantial time, money and effort in building up and developing consumer recognition, awareness and goodwill in the Rove Products and Rove Marks.

24.     The success of the Rove Products is due in part to Plaintiff's marketing and promotional efforts, as described above.

25.     Plaintiff's success is also due to its use of the highest quality materials and processes in making the Rove Products.

26.     Additionally, Plaintiff owes a substantial amount of the success of the Rove Products to its consumers, and word of mouth buzz that its consumers have generated.

27.     As a result of Plaintiff's efforts, the quality of Plaintiff's Rove Products and the word-of-mouth buzz generated by its consumers, the Rove Marks and Rove Products have become prominently placed in the minds of the public.  Members of the public have become familiar with the Rove Marks and Rove Products and have come to associate them exclusively with Plaintiff. Plaintiff has acquired a valuable reputation and goodwill among the public as a result of such association.

28.     Plaintiff has gone through great lengths to protect its interests to the Rove Marks and Rove Products.  No one other than Plaintiff is authorized to manufacture, import, export, advertise, offer for sale or sell any goods utilizing the Rove Marks without the express permission of Plaintiff.

### DHgate and Defendants' User Accounts

29.     DHgate is an online marketplace and e-commerce platform which allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their wholesale and retail products originating from China directly to consumers worldwide and specifically to consumers residing in the U.S., including New York.

30.     As one of the leaders of the worldwide e-commerce and digital retail market, DHgate has generated billions in sales worldwide.[7]  International buyers, including those in the U.S., make up a significant percentage of the business done on DHgate.  For example, DHgate offers 25 million consumer products from 1.2 million suppliers for sale on its platform and attributes over half of its sales to U.S. buyers alone.[8]

31.     As recently addressed in news reports, and as reflected in the federal lawsuits filed against third-party merchants offering for sale and selling infringing and/or counterfeit products on DHgate,[9] 85% of the world's counterfeit goods originate from China.  The rise of Chinese e-commerce platforms, including DHgate, have greatly increased consumers' access to counterfeit goods.[10]

32.     The Office of the United States Trade Representative ("USTR") publishes an annual "Notorious Markets List," which highlights specific physical and online markets around the world that are reported to be engaging in and facilitating substantial copyright piracy and trademark

---

[7] *See* Hamlet Chen, *The Secret of DHgate's Success* (Feb. 11, 2018)*,* Linkedin, https://www.linkedin.com/pulse/secret-DHgates-success-hamlet-chen.

[8] *See* Nona Tepper, *U.S. buyers account for half the sales on Hong Kong-based wholesale site DHgate.com* (Jun. 22, 2015), DigitalCommerce360, https://www.internetretailer.com/2015/06/22/us-buyers-account-half-sales-DHgatecom.

[9] *See, e.g.*, *Can't Live Without It, Inc. v. Shanghai2008 (HK) Trading Limited, et al.*, No. 16-cv-9520 (LAK), (S.D.N.Y. Dec. 12, 2016) and *Yeti Coolers, LLC v. Dunhuang Group, et al.*, No. 17-cv-938 (PAC), (W.D. Tex. Sept. 8, 2017).

[10]    *See* David Pierson, *No brand is too small for counterfeits* (Jan. 19, 2018), The Morning Call, http://www.mcall.com/business/retail/mc-biz-small-counterfeiters-20180116-story.html.

counterfeiting and which is intended to help the U.S. and foreign governments prioritize intellectual property rights enforcement that protects job-supporting innovation and creativity in the U.S. and around the world.[11]   In January 2018, the USTR released the results of its Special 301 Out-of-Cycle Review of Notorious Markets for 2017 and it named DHgate as a "particularly infamous Notorious Market."[12]  With more than 33 million product listings originating from China available for purchase to consumers overseas, rights holders have consistently reported challenges with the counterfeit goods available on DHgate.[13]

33.     Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their User Accounts and on their Merchant Storefronts on DHgate as well as potentially yet undiscovered additional online marketplace platforms.

34.     Through their Merchant Storefronts, Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and target and ship such products to customers located in the U.S., including New York, and throughout the world.

35.     Defendants' Merchant Storefronts share unique identifiers, such as design elements along with similarities in price, description of the goods offered and of the Counterfeit Products themselves offered for sale.

36.     Defendants are in constant communication with each other and regularly participate in online chatroom discussions involving illegal counterfeiting activities, pending litigation and potential new lawsuits.

---

[11] *See* Office of the United States Trade Representative, *2017 Out-of-Cycle Review of Notorious Markets* (2018), https://ustr.gov/sites/default/files/files/Press/Reports/2017%20Notorious%20Markets%20List%201.11.18.pdf.
[12] *Id.*
[13] *Id.*

## **Defendants' Wrongful and Infringing Conduct**

37.     Particularly in light of Plaintiff's success with its Rove Products, as well as the reputation they have gained, Plaintiff and its Rove Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame that Plaintiff has amassed in its Rove Products and Rove Marks and Plaintiff investigates and enforces against such activities.

38.     As part of these efforts, Plaintiff retained NAL to investigate and research manufacturers, wholesalers, retailers and/or other merchants offering for sale and/or selling Counterfeit Products on DHgate.

39.     Through NAL's investigative and enforcement efforts, Plaintiff learned of Defendants' actions which vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to U.S. consumers, including those located in the state of New York, through Defendants' User Accounts and Merchant Storefronts.  Printouts of listings for Counterfeit Products from Defendants' User Accounts and Merchant Storefronts are included in **Exhibit C** attached hereto and incorporated herein by reference**.**

40.     Defendants are not, and have never been, authorized by Plaintiff or any of its authorized agents, authorized licensees or authorized distributors to copy, manufacture, import, export, advertise, distribute, offer for sale or sell Rove Products or to use one or more of the Rove Marks, or any marks that are confusingly similar to the Rove Marks.

41.     Defendants' Counterfeit Products are nearly indistinguishable from one or more of Plaintiff's Rove Products, only with minor variations that no ordinary consumer would recognize.

42.     During its investigation, NAL identified Defendants as offering for sale and/or selling

Counterfeit Products and specified a shipping address located at one of the New York Addresses and verified that each Defendant provides shipping to one of the New York Addresses. Printouts of the checkout pages for the Counterfeit Products and pages from Defendants' Merchant Storefronts reflecting that the Defendants ship the Counterfeit Products to one of the New York Addresses are included in **Exhibit C**

43.     NAL confirmed that each Defendant offers for sale and/or sells Counterfeit Products through their respective User Accounts and/or Merchant Storefronts, accepting payment for such Counterfeit Products in U.S. Dollars through various payment processing services and that each Defendant provides shipping and/or has actually shipped Counterfeit Products to the U.S., including to customers located in New York.  NAL's findings are supported by Defendants' listings for Counterfeit Products and/or the checkout pages for the Counterfeit Products, which are included in **Exhibit C**.

44.     For example, below on the left is an image of one of Plaintiff's Rove Products. Depicted further below is a listing for Defendant Bugoo1's Counterfeit Product ("Bugoo1 Infringing Listing" and "Bugoo1 Counterfeit Product," respectively).  The Bugoo1 Infringing Listing appears        on        Defendant        Bugoo1's        Merchant        Storefront, https://www.dhgate.com/store/21297872, and offers the  buyup Counterfeit Product for $3.86 per item, using, featuring and/or incorporating one or more of the Rove Marks and/or confusingly similar marks in the listing title "**ROVE** Glass Cartridges 0.8ml 1.0ml Ceramic Coil Vape Carts TH205 Thick Oil Ecig Atomizer For 510 Thread Battery Vape" (emphasis added) and in the descriptions and/or product images in the body of the listing.  Further, the Bugoo1 Counterfeit Product is virtually identical to one of Plaintiff's Rove Products and features and/or incorporates one or more of the Rove Marks.  There is no question that the Bugoo1 Counterfeit Product is

designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Rove Products or that the Bug001 Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of one or more of the Rove Marks:

| **Rove Product** | **Defendant's Counterfeit Product** |
|:---:|:---:|
|  |  |

45.     By way of another example, below on the left is an image of one of Plaintiff's Rove Products.  Depicted further below is a listing for Defendant Cbd_vape_pen Counterfeit Product ("Cbd_vape_pen Infringing Listing" and "Cbd_vape_pen Counterfeit Product," respectively).  The Cbd_vape_pen Infringing Listing appears on Defendant Cbd_vape_pen's Merchant Storefront, https://www.dhgate.com/store/21358333, and offers the Cbd_vape_pen Counterfeit Product for $2.09 per item, using, featuring and/or incorporating one or more of the Rove Marks and/or confusingly similar marks in the listing title "**ROVE** Carts Vape Cartridges Ceramic Coil atomizer 0.8ML Thick Oil Pyrex Glass Tank Cookies 11 Flavors Packaging for all 510 Preheat Battery" (emphasis added) and in the descriptions and/or product images in the body of the listing.  Further, the Cbd_vape_pen Counterfeit Product is virtually identical to one of Plaintiff's Rove Products and features and/or incorporates one or more of the Rove Marks.  There is no question that the Cbd_vape_pen Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Rove Products or that the Cbd_vape_pen Counterfeit

Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of one of the Rove Marks:

**Rove Product**                                    **Defendant's Counterfeit Product**

                                

46.     As another example, below on the left is an image of one of Plaintiff's Rove Products. Depicted further below is a listing for Defendant cigmvp's Counterfeit Product ("cigmvp Infringing Listing" and "cigmvp Counterfeit Product," respectively).  The cigmvp Infringing Listing appears on Defendant cigmvp's Merchant Storefront, https://www.dhgate.com/store/21047452, and offers the cigmvp Counterfeit Product for $1.89 per item, using, featuring and/or incorporating one or more of the Rove Marks and/or confusingly similar marks in the listing description "Newest Green **Rove** Cartridges Empty Vape Carts Pyrex Glass Tank 0.8ml Ceramic Coil Thick Oil With 6 Flavors Sticker Top Filling" (emphasis added) and on the product images in the body of the listing.  Further, the cigmvp Counterfeit Product is virtually identical to one of Plaintiff's Rove Products and features and/or incorporates the Rove Marks.  There is no question that the cigmvp Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Rove Products or that the cigmvp Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the Rove Marks:

12

**Rove Product**                    **Defendant's Counterfeit Product**




47.    By these dealings in Counterfeit Products (including, without limitation, copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products), Defendants violated Plaintiff's exclusive rights in the Rove Marks, and have used marks that are confusingly similar to, identical to, and/or constitute counterfeiting and/or infringement of the Rove Marks in order to confuse consumers into believing that such Counterfeit Products are Rove Products and aid in the promotion and sales of their Counterfeit Products.  Defendants' conduct began long after Plaintiff's adoption and use of the Rove Marks, after Plaintiff obtained federal registrations in the Rove Marks, as alleged above, and after Plaintiff's Rove Marks and Rove Products became well-known to the purchasing public.

48.    Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiff's ownership of the Rove Marks, of the fame and incalculable goodwill associated therewith and of the popularity and success of the Rove Products, and in bad faith adopted the Rove Marks.

49.    Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff, the Rove Marks and Rove Products.

50.     Defendants' dealings in Counterfeit Products, as alleged herein, has caused, and will continue to cause confusion, mistake, economic loss, and has, and will continue to deceive consumers, the public and the trade with respect to the source or origin of Defendants' Counterfeit Products, thereby causing consumers to erroneously believe that such Counterfeit Products are licensed by or otherwise associated with Plaintiff, thereby damaging Plaintiff.

51.   By engaging in these actions, Defendants have, jointly and severally, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiff: infringed and counterfeited the Rove Marks, committed unfair competition and unfairly and unjustly profited from such activities at Plaintiff's expense.

52.     Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

### CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**(Trademark Counterfeiting)**
**[15 U.S.C. § 1114(1)(b)/Lanham Act § 32; 15 U.S.C. § 1116(d)/Lanham Act § 34; 15 U.S.C. § 1117(b)-(c)/Lanham Act § 35]**

53.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

54.     Plaintiff is the exclusive owner of all rights and titles to the Rove Marks.

55.     Plaintiff has continuously used the Rove Marks in interstate commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as **Exhibit B**.

56.     Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-known and prior rights in its Rove Marks and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied and/or colorably imitated one or more of the Rove Marks and/or used spurious designations that are identical with, or indistinguishable from, the Rove Marks on or in connection with the manufacturing, import,

export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

57.     Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the Rove Marks through their participation in such activities.

58.     Defendants have applied their reproductions, counterfeits, copies and colorable imitations of the Rove Marks to packaging, point-of-purchase materials, promotions and/or advertisements intended to be used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or equity.

59.     Defendants' unauthorized use of the Rove Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff or its authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the Rove Marks.

60.     Defendants' actions constitute willful counterfeiting of the Rove Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

61.     As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiff, its business, its reputation and its valuable rights in and to the Rove Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Rove Marks.

62.     Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

### SECOND CAUSE OF ACTION
### (Infringement of Registered Trademark)
### [115 U.S.C. § 1114/Lanham Act § 32(a)]

63.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

64.     Plaintiff has continuously used the Rove Marks in interstate commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as **Exhibit B**.

65.     Plaintiff, as owner of all right, title and interest in and to the Rove Marks, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

66.     Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Plaintiff is the owner of the federal trademark registrations for the Rove Marks.

67.     Defendants did not seek and thus inherently failed to obtain consent or authorization

16

from Plaintiff, as the registered trademark owner of the Rove Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell the Rove Products and/or related products bearing the Rove Marks into the stream of commerce.

68.     Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of one or more of the Rove Marks and/or which are identical or confusingly similar to one or more of the Rove Marks.

69.     Defendants knowingly and intentionally reproduced, copied and colorably imitated the Rove Marks and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Defendants' Counterfeit Products.

70.     Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiff is the owner of all rights in and to the Rove Marks.

71.     Defendants' egregious and intentional use of the Rove Marks in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit Products are Plaintiff's Rove Products or are otherwise associated with, or authorized by, Plaintiff.

72.     Defendants' actions have been deliberate and committed with knowledge of

Plaintiff's rights and goodwill in the Rove Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

73.     Defendants' continued, knowing, and intentional use of one or more of the Rove Marks without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered Rove Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

74.     As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the Rove Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and the valuable Rove Marks.

75.     Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**(False Designation of Origin, Passing Off & Unfair Competition)**
**[15 U.S.C. § 1125(a)/Lanham Act § 43(a)]**

76.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

77.     Plaintiff, as the owner of all right, title and interest in and to the Rove Marks has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

78.     The Rove Marks are inherently distinctive and/or has acquired distinctiveness.

79.     Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly similar to, and constitute reproductions of the Rove Marks and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Counterfeit Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Counterfeit Products are Rove Products or related products, and/or that Defendants' Counterfeit Products are authorized, sponsored, approved, endorsed or licensed by Plaintiff and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of such Counterfeit Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, the Rove Marks, to Defendants' substantial profit in blatant disregard of Plaintiff's rights.

80.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products that are identical to, confusingly similar to or which constitute colorable imitations of Plaintiff's Rove Products using marks that are identical and/or confusingly similar to, or which constitute colorable imitations of the Rove Marks, Defendants have traded off the extensive goodwill of Plaintiff and its Rove Products and did in fact induce, and intend to, and will continue to induce customers to purchase Defendants' Counterfeit Products, thereby directly and unfairly competing with Plaintiff.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff and its Rove

Marks, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

81.     Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks that are identical or confusingly similar to and constitute reproductions of the Rove Marks would cause confusion, mistake or deception among purchasers, users and the public.

82.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation Plaintiff, its Rove Products and Rove Marks.

83.     As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its Rove Products and by depriving Plaintiff of the value of its Rove Marks as commercial assets in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of the Rove Marks.

84.     Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**(Unfair Competition)**
**[New York Common Law]**

85.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

86.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products, Defendants have traded off the extensive goodwill of Plaintiff and its Rove Products to induce, and did induce and intend and will continue to induce, customers to purchase their Counterfeit Products, thereby directly competing with Plaintiff.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

87.     Defendants' advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products was and is in violation and derogation of Plaintiff's rights and is likely to cause confusion and mistake, and to deceive consumers and the public as to the source, origin, sponsorship or quality of Defendants' Counterfeit Products.

88.     Defendants knew, or by the exercise of reasonable care should have known, that their advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products and their continuing advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products would cause confusion and mistake, or deceive purchasers, users and the public.

89.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard of Plaintiff's rights, and for the wrongful purpose of injuring Plaintiff, and its competitive position while benefiting Defendants.

90.    As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its Rove Products in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law, and Plaintiff has been and will continue to be deprived of the value of its Rove Marks as commercial assets in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law.

91.    As a result of Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Plaintiff's damages and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive, and each of them, as follows:

A.    For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3) and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.    In the alternative to Defendants' profits and Plaintiff's actual damages, enhanced

discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c)  in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the Court considers just, which Plaintiff may elect prior to the rendering of final judgment;

C.      For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for willful trademark infringement of Plaintiff's federally registered Rove Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.      For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.      For an award of damages to be proven at trial for common law unfair competition;

F.      For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

> i.   manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;
>
> ii.  directly or indirectly infringing in any manner any of Plaintiff's Rove Marks;

iii.    using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Rove Marks, to identify any goods or services not authorized by Plaintiff;

iv.    using any of Plaintiff's Rove Marks, or any other marks that are confusingly similar to the Rove Marks, on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

v.    using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities by Plaintiff;

vi.    engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein, including the of advertising and/or dealing in any Counterfeit Products;

vii.    engaging in any other actions that constitute unfair competition with Plaintiff;

viii.    engaging in any other act in derogation of Plaintiff's rights;

ix.    from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products; (ii) any

24

computer files, data, business records, documents or any other records or evidence relating to Defendants' User Accounts or Merchant Storefronts, Defendants' Assets from or to Defendants' Financial Accounts and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

x. from secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying any of Defendants' Assets from or Defendants' Financial Accounts until further ordered by this Court;

xi. effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any final judgment or order in this action;

xii. providing services to Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts; and

xiii. instructing any other person or entity to engage or perform any of the activities referred to in subparagraphs (i) through (xii) above; and

G. For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiff for destruction any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe any of Plaintiff's Rove Marks, or bear any marks that are confusingly similar to the Rove Marks;

H. For an order of the Court requiring that Defendants deliver up for destruction to Plaintiff any and all Counterfeit Products and any and all packaging, labels, tags, advertising

and promotional materials and any other materials in the possession, custody or control of Defendants that infringe any of Plaintiff's Rove Marks, or bear any marks that are confusingly similar to the Rove Marks pursuant to 15 U.S.C. § 1118;

I.    For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Counterfeit Products as described herein, including prejudgment interest;

J.    For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiff;

K.    For an award of exemplary or punitive damages in an amount to be determined by the Court;

L.    For Plaintiff's reasonable attorneys' fees;

M.    For all costs of suit; and

N.    For such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all claims.

Dated: March 10, 2020

EPSTEIN DRANGEL LLP

BY:

Danielle S. Yamali (DY 4228)
dfutterman@ipcounselors.com
Jason M. Drangel (JD 7204)

26

jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Brieanne Scully (BS 3711)
bscully@ipcounselors.com
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391
*Attorneys for Plaintiff
Rove, LLC*

27